IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| **EDWARD E. PRICE** | * | **CIVIL NO. 07-00937** |
| | * | **SECTION P** |
| **VERSUS** | | |
| | * | **JUDGE JAMES** |
| **BURL CAIN, WARDEN** | * | **MAGISTRATE JUDGE HAYES** |

### REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is an opposed petition for writ of habeas corpus under 28 U.S.C. § 2254 (Doc. #1) filed by petitioner Edward Price. For reasons stated below, it is recommended that the petition be **DENIED and DISMISSED with prejudice.**

### BACKGROUND

In his petition, Price raises two claims. First, he contends that the trial court erred when it rejected his *Batson* challenge, ruling that he had failed to make a prima facie showing that the prosecution used its peremptory challenges on the basis of race. Second, Price contends that his mandatory life sentence for aggravated rape required by LA.REV. STAT. ANN. § 14:42 is unconstitutionally excessive under the Eighth Amendment.

The underlying facts in this case have been set forth by the Louisiana Court of Appeals.

> [T]he 22 year-old female victim, S.C.,[1] was a pharmacy student working as an Assistant Hall Director on a rotating assignment at Sherrouse Hall, an all-male dormitory on the campus of the University of Louisiana at Monroe. The defendant, Edward E. Price, entered the dormitory at approximately 10:00 p.m. and attempted

---

[1] The victim's initials were used because of victim confidentiality requirements under LA.REV. STAT. ANN. § 46:1844(W).

to engage S.C. in conversation as she sat at the desk in the lobby area attending to her duties and studying. S.C. asked the defendant if he needed assistance, but he continued to ask her personal questions regarding where she lived and what kind of car she drove. After a while, S.C. ignored him and continued to study.

The defendant attempted to persuade S.C. to enter the men's restroom with a complaint about the sink not working, beckoning her to "come see, come see." S.C. explained that she was only there to assist, but would make a note of the complaint in the maintenance log in accordance with the proper procedure.  Approximately a half an hour later, the defendant called to S.C. for help from the computer room, saying that there was a problem with logging on the computer system. She walked from the lobby area into the well-lit computer room. The defendant was alone.

While S.C. helped the defendant with the computer, he asked her if she would perform oral sex on him, and she refused. As S.C. finished showing the defendant how to log on to the computer, and realized that there was no problem with the computer system, she felt uncomfortable and turned to leave. The defendant then grabbed her from behind. S.C.'s attempts to scream, flail, and run were thwarted by the defendant, who covered her mouth and nose with one hand, pinned her arms down with an arm, and lifted her 95-pound body up off the ground. The defendant pushed S.C. into the corner of the room, and continued to demand that she perform oral sex on him. He threatened to hit her if she screamed and tried to push her body down on the floor in front of him. When S.C. managed to squirm away, the defendant picked her body up and slammed her down onto the floor, causing her to hit her head. The defendant then straddled S.C., covered her mouth and nose, pinned down her arms, and dragged her out of the computer room, across the lobby and into the women's restroom. During the scuffle he stepped on her feet and she lost one of her shoes. S.C. testified that she thought she was going to die because the defendant was stronger than her and she could not escape, and she was unable to breathe. The defendant kept telling her not to scream-that nobody was around and nobody would hear her.

An eyewitness, Travis Reuther, was standing in an unlighted room adjacent to the lobby when he saw the defendant, "a large man," lift the victim, "a small girl," up in the air and then drag her through the lobby into the women's restroom. The defendant had the victim's mouth covered, but the victim made eye contact with Reuther by staring at him. The victim was kicking her legs trying to get free. It was clear to Reuther that the trip to the restroom was not consensual, and he called the police.

The defendant took S.C. into the very last stall in the women's restroom and made her sit down on the toilet. He held her there in a tight grip with one arm and kept a fist against her head. The defendant straddled S.C. and ordered her to be quiet and to perform oral sex on him or he would "snap" her neck. She thought he was

> capable of breaking her neck because the stall was small, and the defendant was "pretty much" on top of her. He was wearing sweat pants with an elastic waistband which he pulled down just far enough to expose his penis. The defendant moved very close to S.C. and forced her head toward his erect penis, which she was forced to hold in her hand and "lick" with her tongue twice. The defendant told her to "stick it in your mouth and suck it," but she kept telling him, "No, no I won't do that, no." S.C., who was fully clothed, resisted his attempts to touch her breasts and tried talking her way out of the situation by asking the defendant to let her go. She also asked him why he was doing this, but he kept telling her to be quiet. S.C. heard voices outside the restroom door, and soon someone entered the bathroom and asked who was in there. As the defendant leaned backwards out of the stall to pull his pants up, S.C. pushed him away and ran out of the bathroom past some university police officers. She was crying hysterically. The officers brought her the shoe she had lost in the scuffle. Her hair was mussed-up and her eyeglasses were bent because they had been knocked off her face several times.

*Price*, 917 So. 2d at 1203-04.

Price, an African-American, was tried in front of an all-White jury. *Louisiana v. Price*, 917 So. 2d 1201, 1209 (La. Ct. App. 2005). The jury was selected from a 54-member venire, of which 16 members were African-American. *Id.* at 1210. During voir dire, the prosecution used five of its twelve peremptory challenges to strike African-Americans, and used an additional peremptory challenge to "back strike" another. *Id.* Another African-American potential juror, not challenged by the state, was excused by the defense. *Id.* at 1211.

After the all-White panel had been selected, the defense objected, stating, "I think that we would interpose at this point a *Batson* challenge because . . . this panel is going to be exclusively White." *Id.* Despite prompting from the judge ("You better make [your case] better than that"[2]), the defense did not elaborate or provide additional support for the challenge. *See id.* The trial court concluded "that the mere statement that the jury was [all-White] was not sufficient to make a prima facie case to support a *Batson* objection." *Id.* The jury, by a vote of eleven-to-one,

---

[2] (Record at p.760).

found Price guilty of aggravated rape.

Price appealed the trial court's decision to the Louisiana State Court of Appeals. *See id.* The state appellate court upheld the decision, noting that "the trial judge's findings are entitled to great deference by a reviewing court." *Id.* (citing *Batson v. Kentucky*, 476 U.S. 79, 98 n.21 (1986); *Louisiana v. Snyder*, 750 So. 2d 832 (La. 1999)). The appellate court held that "the defendant's contention that discrimination is apparent from the mere fact that the jury ultimately empaneled was [all-White] is without merit." *Id.* at 1211.

Before sentencing, Price moved for deviation from the mandatory life sentence required by LA. REV. STAT. ANN. § 14:42(D)(1), on the ground that it was unconstitutionally excessive. The court denied Price's motion, explaining that "if the law says he gets life, he gets life." *Price*, 917 So. 2d at 1215. In his direct appeal, Price argued that the trial court erred in denying the motion. *Id.* at 1214. The appellate court affirmed, holding that the "mandatory life sentence does not shock a sense of justice, such as to warrant a deviation from the mandatory sentence." *Id.*

Price applied for a writ of certiorari and/or review to the Louisiana Supreme Court regarding both his *Batson* and Eighth Amendment claims. The Court denied the writ. *Louisiana v. Price*, 929 So. 2d 1284 (La. 2006).

## LAW AND ANALYSIS

### I. Exhaustion and Timeliness

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petitioner must exhaust his claims in state court before presenting them to a federal court for review. *See* 28 U.S.C. § 2254(b)(1)(A). Respondent concedes (Doc. #10, p.12), and the undersigned finds, that Price exhausted both claims in state court before presenting them here.

## II. Standard of Review

The scope of this court's review of Price's petition is governed by the AEDPA. *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). Courts are to review "both pure questions of law and mixed questions of law and fact under § 2254(d)(1)." *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). Courts review questions of fact under § 2254(d)(2). *Id.*

### A. § 2254(d)(1)

Under § 2254(d)(1), a state-court decision can be overturned if it satisfies one of two conditions. First, it can be overturned if it "is contrary to [the Supreme] Court's clearly established precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003). A decision is contrary to precedent if it "applies a rule that contradicts the governing law set forth in [Supreme Court] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141 (2005).

Second, a state-court decision can be overturned under § 2254(d)(1) if it is an "unreasonable application" of clearly established Supreme Court precedent. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). An "unreasonable application" occurs when a state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of petitioner's case." *Wiggins*, 539 U.S. at 520. "[T]he state court's decision must have been [not only] incorrect or erroneous [but] objectively unreasonable." *Id.* at 520-21.

### B. § 2254(d)(2)

A decision can be overturned under § 2254(d)(2) if it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Williams v. Taylor*, 529 U.S. 362, 386 (2000).

### III.   *Batson*

The Equal Protection Clause of the Fourteenth Amendment prohibits prosecutors from striking prospective jurors solely on the basis of their race. *Batson*, 476 U.S. 79. In *Batson*, the Court created a three-step analysis for trial courts to evaluate a defendant's claim of a racially discriminatory peremptory challenge. *Id.* at 96-98. First, "a defendant must make a prima facie showing that the prosecutor exercised his peremptory challenges on the basis of race." *Id.* at 96. Second, "[o]nce the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation" for the use of the peremptory challenge. *Id.* at 97. Third, and finally, the "trial court then will have the duty to determine if the defendant has established purposeful discrimination." *Id.* at 98.

In this case, the trial court never advanced past the first step, finding that Price had failed to make a prima facie case. Price contends that the trial court, by refusing to advance to the second step, erred in two ways. First, Price claims the court erred by applying the wrong legal standard. Second, Price claims that the court erred when it found that he had failed to make a prima facie showing of discrimination.

### A. The Trial Court Applied the Correct Legal Standard

Price must demonstrate that the trial court's "decision . . . was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." § 2254(d)(1). *Batson* is clearly established federal law. *Batson* requires defendants to demonstrate that the facts and circumstances raise an inference that the prosecutor excluded the potential juror on account of his or her race. *Batson*, 476 U.S. at 96. Under *Batson*, if the defendant fails to establish a prima facie case, the court should not to move on to the second step. In *Johnson v. California,* also clearly established federal law, the Court explained that it had not

intended "the first step to be so onerous that a defendant would have to persuade the judge . . . that the challenge was more likely than not the product of purposeful discrimination." 545 U.S. 162, 170 (2005).

In this case, the trial court properly employed the rules and principles set forth in *Batson* and *Johnson*. Once defense counsel had raised its challenge, the court told counsel to "make your case." (Record at p.760). The court went on to explain to the prosecutor, "I'm not asking you to respond yet because first he's got to make a prima facie case." (Record at p.763); *c.f. Batson*, 476 U.S. at 93-94. These directions demonstrate that the court understood and employed the steps required by *Batson*.

Price argues that the trial court imposed an unduly high burden on the defense, thereby contradicting *Johnson*. (Doc. #3, p.3-5).[3] While Price contends that it is "clear" that the trial court imposed an improper burden, Price does not actually name which burden the court improperly employed. (Doc. #3, p.5). Instead, Price focuses on two factors considered by the trial court and argues that consideration of them constitutes reversible error.

First, Price takes issue with the court's consideration of the fact that the defense struck an African-American potential juror. (Doc. #3, p.6). Price cites *United States v. Stephens*, 421 F.3d 503, 514 (7th Cir. 2005), for the proposition that court's consideration of that fact constitutes error. *Stephens* states that a defendant's discrimination against prospective jurors on the basis of race does not render constitutional the prosecution's discrimination of potential jurors of the same race. *Id.* The trial court in this case, however, neither stated nor implied that it believed the defense's use of a peremptory challenge sanitized the prosecution's otherwise discriminatory

---

[3] To the extent that Price argues that the court's factual finding was unreasonable, the undersigned disagrees. *See infra*, Part III-B.

conduct. Instead, the court was simply remarking on the fact that at least one African-American potential juror would have served on the jury but for the defense's use of a peremptory challenge. That fact supports the proposition that the prosecution was not seeking to remove every African-American potential juror. The trial court's consideration of the defense's peremptory challenge for this reason neither violates, nor unreasonably applies a rule set forth in *Stephens*, *Johnson*, *Batson*, or any clearly established precedent.

 Second, Price quarrels with the trial court's consideration of the proportion of the prosecution's peremptory strikes used to excuse White potential jurors and African-American potential jurors. (Doc. #3, p.4). The court noted that one-half of the prosecution's challenges were used to excuse African-Americans, whereas only one-third to one-quarter of the panel was African-American. Price argues that the proportion is inconsequential since by striking the same number of Whites and African-Americans, the prosecution could achieve its discriminatory purpose of eliminating all of the African-Americans. While true, this fact does not entail that the court's consideration of the proportion was contrary to Supreme Court precedent.

 In fact, the court's focus on the statistics was quite reasonable given the arguments and evidence before it. It is important to remember that the defense's sole argument was that the venire panel was all-White. With no other arguments for the court to consider, it seems imminently reasonable that the court would consider both the percentage of African-Americans stricken and the percentage of African-Americans in the venire. The court correctly realized that the proportion could be probative of a discriminatory intent. For example, had the prosecution used all of its strikes on African-Americans when the panel was only one-fiftieth African-American, it might tend to show a discriminatory purpose. In contrast, had the entire panel been African-American, a high percentage of African-Americans stricken would have had no

probative value. Thus, the court's consideration of the proportion similarly was not an unreasonable application of governing law. As a result, Price should not be granted relief on this ground.

### B. The Trial Court's Finding Was Not Unreasonable

Price contends that the trial court's finding that the defense had failed to establish a prima facie case of discrimination was erroneous. This contention is reviewed under § 2254(d)(2) since a court's determination that the defense "failed to make a prima facie showing is a factual finding." *Soria v. Johnson*, 207 F.3d 232, 238 (5th Cir. 2000).

The trial court was presented with the following evidence: (i) the panel was all-White; (ii) less than one third of the venire (16 out of 54) appeared to be African-American; (iii) the prosecutor used 12 peremptory challenges, six of which were used to excuse African-American potential jurors; (iv) the prosecution had first challenged several African-American potential jurors for cause, before excusing them with peremptory challenges; and (v) the defense used one of its peremptory challenges to excuse an African-American potential juror who would have otherwise served on the jury. *Price*, 917 So. 2d at 1210-11. After considering the evidence, the trial court denied the *Batson* challenge, finding that the "pure statistical analysis of it . . . doesn't rise to the level of prima facie case of discrimination."[4] (Record at p.773).

This finding was not unreasonable in light of the evidence presented. While another court might have reached the opposite conclusion, that fact alone does not render the finding unreasonable. The defense presented very little evidence it support of its challenge. *C.f. Johnson*, 545 U.S. at 169 (reiterating that a "prima facie case of discrimination can be made out

---

[4] In concluding that the defense had failed to establish a prima facie case, the court noted that its decision "was close" and that the all-White panel had "peeked [its] interest." (Record at p.771-73).

by offering a wide variety of evidence."). For the most part, the defense relied solely on the fact that the panel chosen was all-White. *C.f. Johnson v. Quarterman*, No.03-CV-2606, 2007 U.S. Dist. LEXIS 69353, at *37-38 (N.D.Tex. Sept. 18, 2007) ("the defense attorney immediately objected to the prosecutor's exercise of a peremptory challenge, noting that she was 'a person of African-American descent' as was the defendant, and that this juror 'is as strong on paper, at least, and in her answers to the State as any person that we've selected on this jury.'"). The defense did not point to any statements or questions by the prosecutor, nor to any statements by a potential juror that supported the *Batson* claim. *C.f. Brown v. Kinney Shoe Co.*, 237 F.3d 556, 561 (5th Cir. 2001) ("Factors that give rise to an inference of discrimination include . . . the party's statements and questions during voir dire."). Finally, the defense failed to provide a cogent argument supporting its claim of discriminatory intent. Given the lack of evidence and the unpersuasive argument by the defense, the trial court's finding was reasonable.

## IV. Eighth Amendment

Price argues that the mandatory life sentence that he is serving is "is constitutionally excessive under the Eighth Amendment."[5] (Doc. #3, p.8). This claim is reviewed under § 2254(d)(1). *C.f. Lockyer*, 538 U.S. 63 (reviewing, under § 2254(d)(1), a defendant's argument that "two consecutive terms of 25 years to life for stealing approximately $150 in videotapes violated the Eighth Amendment."). Thus, as a threshold matter, this court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the

---

[5] Price also contends that the sentence is excessive under the "Louisiana Constitutional Article 1 Section 20." (Doc. #3, p8). This contention is without merit both substantively, *see Louisiana v. Ingram*, 688 So. 2d 657, 668 (La. Ct. App. 1997), and procedurally, because under the AEDPA this court may grant Price's petition only if the state court decision violated United States Supreme Court precedent. *See* § 2254(d)(1).

United States.'"[6]  *Id.* at 71.

In 2003, the *Lockyer* Court noted that "[t]hrough this thicket of Eighth Amendment jurisprudence, one governing legal principle emerges as 'clearly established' under § 2254(d)(1): A gross disproportionality principle is applicable to sentences of terms of years." *Id.* at 72. Hence, "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle."[7]  *Id.* at 72-73.

In *Lockyer*, the Court explained that while "the precise contours" of the gross disproportionality principle "are unclear," the principle is "applicable only in the 'exceedingly rare' and 'extreme' case."  *Id.* (citing *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring)).  In *Ewing v. California*, a case decided on the same day as *Lockyer*, the Court held that "[t]he Eighth Amendment does not require strict proportionality between crime and sentence.  Rather, it forbids only extreme sentences that are grossly disproportionate to the crime." 538 U.S. 11, 24-25 (2003) (plurality decision).  In *Ewing*, the Court considered

---

[6] Despite the clear dictates of § 2254 that federal courts may not overturn state court decisions unless, *inter alia*, they contradict *clearly established* federal law, Price relies on several cases with questionable precedential value.  Price relies on *Woodson v. North Carolina*, 428 U.S. 280 (1976), which was a plurality decision; the dissent in *Harmelin v. Michigan*, 501 U.S. 957, 1009-29 (1991) (White, J., dissenting); and the three-part test in *Solem v. Helm*, 463 U.S. 277 (1983), that the Court has since eschewed.  *E.g. Harmelin*, 501 U.S. at 965 (Scalia, J., Opinion) ("*Solem* was simply wrong"); *id.* at 1004 (Kennedy, J., concurring) ("*Solem* . . . did not announce a rigid three-part test.").

[7] The undersigned has reviewed the post-*Lockyer* Supreme Court caselaw in search of other clearly established principles.  Most of the Court's post-*Lockyer* Eighth Amendment cases, however, have been capital punishment cases.  *See e.g. Roper v. Simmons*, 543 U.S. 551 (2005); *Kansas v. Marsh*, 126 S. Ct. 2516 (2006); *Schriro v. Smith*, 546 U.S. 6 (2005); *Bell v. Cone*, 543 U.S. 447 (2005).  The undersigned has found no clear principle in those cases to apply here, bearing in mind that "death is a punishment different from all other sanctions in kind rather than degree" and that Eighth Amendment jurisprudence reflects this reality.  *Woodson*, 428 U.S. at 303-04.

factors such as the "gravity of the offense compared to the harshness of the penalty," 538 U.S. at 28, the defendant's criminal history, *Id.* at 29-30, and the Court's "traditional deference to legislative policy choices." *Id.* at 25.

In this case, the state courts considered similar factors in reaching their decisions: (i) the nature of Price's offense; (ii) Price's history of violence; and (iii) the right of the legislature to decide on an appropriate sentence. *Price*, 917 So. 2d at 1214-15; (Record at p.1112-23). As these factors are consistent with some of those referenced in *Ewing*, the state courts did not apply a rule contradicting Supreme Court precedent. Furthermore, given the serious nature of Price's offense, this is not the rare case in which the life sentence is extreme or grossly disproportionate.

Price argues that the state courts' decisions are contrary to *Solem v. Helm*, 463 U.S. 277 (1983), which Price argues is a clearly established Supreme Court precedent. (Doc. #3, p.9 ("We would assert that the proper test for proportionality is set out in *Solem*.")). This contention is without merit. The three-part test in *Solem* has been eschewed by the Court in subsequent cases and is therefore not clearly established precedent.[8] *E.g. Harmelin*, 501 U.S. at 965 (plurality opinion) ("*Solem* was simply wrong"); *id.* at 1004 (Kennedy, J., concurring) ("*Solem* . . . did not announce a rigid three-part test."); *see also McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992) (explaining that "[o]nly four justices (in *Harmelin*) . . . supported the continued application of all three factors in *Solem*, and five justices rejected it. Thus, this much is clear: disproportionality survives; *Solem* does not.").

Consequently, Price is left only with the argument that the "set of facts" in his case "are materially indistinguishable from" *Solem*. *See Lockyer*, 538 U.S. at 73. The facts of the two

---

[8] Even if the *Solem* test were controlling, the undersigned's recommendation would remain the same. Use of the *Solem* test would not result in the conclusion that Price's sentence is grossly disproportionate.

12

cases, however, are quite distinguishable. In *Solem*, the defendant pled guilty to "uttering a 'no account' check for $100." 463 U.S. at 279-81. In contrast, Price was convicted of aggravated rape. The distinction between the offenses is sufficiently striking such that the point need not be dwelled upon. It is enough to consider the state appellate court's brief summary of the facts underlying Price's conviction:

> the defendant grabbed S.C. from behind, covered her mouth and nose to prevent her from screaming for help, pinned her arms down, lifted her off the ground, and demanded that she perform oral sex on him. When she managed to escape, he picked her up and slammed her to the ground. He then dragged her to the women's restroom and forced her into one of the stalls. He threatened her life to prevent her from further resisting. He then forced her to perform oral sex on him.

*Price*, 917 So. 2d at 1215. Given the serious nature of Price's crime, the state court did not confront a set of facts materially indistinguishable from those in *Solem*. *Williams*, 529 U.S. at 406 n.1. Nor did the state courts unreasonably apply governing legal principles.[9]

Finally, Price emphasizes the fact that, up until a few years ago, his conduct would have been punishable by a maximum of 20 years imprisonment under Louisiana's Aggravated Oral Sexual Battery statute. LA. REV. STAT. ANN. § 14:43.4; (Doc. #3, p.7). Price argues that this fact entails that the mandatory life sentence he is serving is unconstitutionally excessive. The state courts' rejection of this argument was consistent with Supreme Court precedent; the *Ewing* Court rejected a similar argument. In *Ewing*, a criminal statute gave the prosecutor the discretion to charge the defendant with either a misdemeanor or a felony.[10] 538 U.S. at 28-29. Ewing, who was sentenced to 25 years to life, argued that since he could have been charged with a misdemeanor, his life sentence was unconstitutionally excessive. *Id.* at 16-29. The Court

---

[9] In fact, neither court cited a Supreme Court case in reaching its decision.

[10] The crime was "presumptively a felony, and remains a felony except when the discretion is actually exercised." *Ewing*, 538 U.S. at 16.

rejected Ewing's argument, holding that the fact that the crime could be charged as a misdemeanor was "of no moment." *Id.* at 28.

For the reasons stated above, it is recommended that the petitioner's petition for writ of habeas corpus (Doc. #1) under 28 U.S.C. § 2254 be **DENIED and DISMISSED with prejudice**. Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.

THUS DONE AND SIGNED at Monroe, Louisiana, this 4th day of January, 2008.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE