# IN THE UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | | |
|---|---|---|
| **EDWARD E. PRICE** | * | **CIVIL ACTION NO. 07-00937** |
| | * | **SECTION P** |
| **VERSUS** | | |
| | * | **JUDGE ROBERT G. JAMES** |
| **BURL CAIN, WARDEN** | * | **MAGISTRATE JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on remand from the Fifth Circuit, is an opposed petition for writ of habeas corpus under 28 U.S.C. § 2254 (Doc. #1) filed by petitioner Edward Price. For reasons stated below, it is recommended that the petition be **DENIED.**

## BACKGROUND AND PROCEDURAL HISTORY

Edward Price, an African-American, was tried and convicted by an all white jury of aggravated rape and sentenced to life in prison. That jury was selected from a 54-member venire, of which 16 members were African-American. The State used six of its twelve peremptory challenges to strike African-Americans, three of whom the state had unsuccessfully challenged for cause. Another African-American potential juror, not challenged by the state, was excused on a peremptory strike by the defense. One of the two alternates on the jury was African-American, but the alternates were excused prior to deliberation by the jury.

After exhausting his remedies in state court, Price filed a petition for a writ of habeas corpus in this court, alleging that the state trial court erred when it ruled that Price failed to make a prima facie showing that the State had exercised its peremptory challenges on the basis of race.

When this court denied Price's claim, Civil No. 07-00937, 2008 U.S. Dist. LEXIS 23474 (W.D. La. Mar. 4, 2008), he appealed to the Fifth Circuit. The Fifth Circuit remanded, No. 08-30338 (5th Cir. Mar. 16, 2009), after finding that the facts and circumstances of Price's case - namely, that the State used six of its twelve peremptory challenges to strike African-Americans from the venire, and the resulting jury was all-white - made the necessary prima facie showing and therefore satisfied the first step of *Batson v. Kentucky*, 476 U.S. 79 (U.S. 1986).

Accordingly, the issue before this court is whether the state violated *Batson*. To make this determination, this court will consider *Batson*'s second and third steps as they relate to the facts of this case.

## LAW AND ANALYSIS

### I. Standard of Review

The scope of this court's review of Price's petition is governed by the Antiterrorism and Effective Death Penalty Act (the "AEDPA"). 28 U.S.C. § 2254; *see Penry v. Johnson*, 532 U.S. 782, 792 (2001). Courts are to review "both pure questions of law and mixed questions of law and fact under § 2254(d)(1)." *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). Courts review questions of fact under § 2254(d)(2). *Id.*

#### (a) § 2254(d)(1)

Under § 2254(d)(1) of the AEDPA, a state-court decision can be overturned if it satisfies one of two conditions. First, it can be overturned if it "is contrary to [the Supreme] Court's clearly established precedent." 28 U.S.C. § 2254(d)(1); *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003). A decision is contrary to precedent if it "applies a rule that contradicts the governing law set forth in [Supreme Court] cases, or if it confronts a set of facts that is materially

2

indistinguishable from a decision of [the Supreme] Court but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141 (2005).

Second, a state-court decision can be overturned under § 2254(d)(1) if it is an "unreasonable application" of clearly established Supreme Court precedent. 28 U.S.C. § 2254(d)(1); *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). An "unreasonable application" occurs when a state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of petitioner's case." *Wiggins*, 539 U.S. at 520. "[T]he state court's decision must have been [not only] incorrect or erroneous [but] objectively unreasonable." *Id.* at 520-21.

**(b) § 2254(d)(2)**

A decision can be overturned under § 2254(d)(2) of the AEDPA if it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Williams v. Taylor*, 529 U.S. 362, 386 (2000).

**II. *Batson***

*Batson* requires defendants to demonstrate that the State has used peremptory challenges in violation of the Equal Protection Clause. *Batson*, 476 U.S. at 96-98. Since *Batson* is clearly established Supreme Court precedent, *Hernandez v. Lamarque*, 295 Fed. Appx. 235, 237 (Ninth Cir. Oct. 1, 2008), under the AEDPA, Price must demonstrate that the trial court's decision in not finding a *Batson* violation was either contrary to or involved an unreasonable application of *Batson*.

In *Batson*, the Court created a three-step analysis for trial courts to evaluate a defendant's claim of a racially discriminatory peremptory challenge. *Id.* at 96-98. First, "a defendant must

3

make a prima facie showing that the prosecutor exercised his peremptory challenges on the basis of race." *Id.* at 96. Second, "[o]nce the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation" for the use of the peremptory challenge. *Id.* at 97. Third, and finally, the "trial court then will have the duty to determine if the defendant has established purposeful discrimination." *Id.* at 98.

In this case, the trial court never advanced past the first step after finding that Price had failed to make a prima facie case. Thus, the trial court never inquired into the State's reasons for its peremptory challenges. However, because this court's review of the State's proffered reasons is *de novo*, *United States v. Williamson*, 533 F.3d 269, 274 (5th Cir. 2008), this court's analysis of steps two and three of Price's *Batson* challenge is not barred, and is informed by the reasons the State proffered for each of its peremptory challenges at an evidentiary hearing. (Evidentiary Hr'g [doc. # 27]).

Step two of *Batson* presents the State with a "minimal burden" to satisfy. *United States v. Williams*, 264 F.3d 561, 571 (5th Cir. 2001). A neutral explanation means "an explanation based on something other than the race of the juror." *Id.* A neutral explanation "need not be persuasive, nor even plausible, but only race-neutral and honest." *Id.*

The third and final step of *Batson* requires a court to determine the "decisive question" of "whether a proffered race-neutral explanation should be believed." *Id.* at 572. "If the State asserts that it struck a black juror with a particular characteristic, and it also accepted nonblack jurors with that same characteristic, that is evidence that the asserted justification was a pretext for discrimination." *Reed v. Quarterman*, 555 F.3d 364, 375 (5th. Cir. 2009). Furthermore, "if the State asserts that it was concerned about a particular characteristic but did not engage in

meaningful voir dire examination on that subject, then the State's failure to question the juror on that topic is some evidence that the asserted reason was a pretext for discrimination." *Id.* Finally, a court "must consider only the State's asserted reasons for striking the black jurors and compare those reasons with its treatment of the nonblack jurors." *Id.*

> **(a) *Batson* Step Two**

Price does not contest, and the court finds, that each of the reasons the State proffered for its peremptory challenges of African-American jurors was race-neutral. The State therefore satisfied its minimal burden at step two of *Batson.*

> **(b) *Batson* Step Three**

Price contends that the State's proffered reasons for its peremptory challenges of three of the African-American members of the venire - Bernice Dunlap-Griffin, Sharon Ricks, and Kelwa Mitchell[1] - were pretextual. However, a review of the hearing indicates that Price cannot establish purposeful discrimination as to any of these three African-American veniremen.

Price first asserts that the State challenged Bernice Dunlap-Griffin because she had a cousin convicted of a sex crime, and then argues that this reason must be pretextual because jurors Michael Farrar, Ruby Pennington, and Loretta Walker, all of whom were Caucasian and none of whom were challenged by the State, also had relatives who were convicted of either sex crimes or other crimes. However, the State's reasons for challenging Dunlap-Griffin were far more nuanced than Price indicates, clearly distinguish her situation from the other three. The State pointed to Dunlap-Griffin's following statements as reasons for why it challenged her: she

---

[1] The State used a peremptory challenge to strike each of these three jurors only after the trial judge denied a challenge for cause. (Hr'g, 25, 89, 145).

5

knew a lot of the details of her cousin's case; she felt "bad" for her cousin; she believed certain evidence was "missing" in her cousin's case; and, most importantly, she did not believe she could separate the facts of Price's case from her cousin's. (Hr'g, 27-30). In contrast, Farrar was not aware of how his cousin's statutory rape case was adjudicated, and testified that his cousin's case would not affect how he viewed Price's case. (Hr'g, 101). Pennington also testified that her cousin's sex crime case would not affect her ability to view Price's case, and furthermore testified that she was not close to her cousin and that she believed that the sentence her cousin received was "very fair." (Hr'g, 133-34). Finally, Walker testified that the non-sex crime convictions of her ex-husband and her cousins - her ex-husband was convicted of a DWI and her cousins were convicted of drug related crimes in New Mexico - would not affect how she viewed Price's case, and also indicated that she was not familiar with the facts and circumstances of her cousins' convictions.[2] (Hr'g, 75). Thus, Dunlap-Griffin's response to her cousin's conviction was decidedly distinct from the responses of Farrar, Pennington, and Walker to the convictions of their respective relatives. While Dunlap-Griffin sympathized with her cousin and did not think that she could separate her cousin's case from Price's, the three Caucasian jurors were more emotionally detached from their previously convicted relatives and believed that they could view Price's case independent of their relatives' cases. In addition, Dunlap-Griffin expressed doubts about whether she could convict a non-testifying defendant whereas the three Caucasian jurors did not. (Hr'g, 30). The undersigned is convinced that the State's reasons for using a

---

[2] Walker's relatives were not convicted of sex-crimes, and thus Price's comparison of Dunlap-Griffin to Walker seems misplaced. In a sex-crime case such as Price's, the State would generally have less of a reason to use a peremptory challenge to strike a juror whose relatives have been convicted of non-sex crimes than a juror whose relatives have been convicted of sex crimes.

peremptory challenge to strike Dunlap-Griffin were therefore race-neutral.

Price also asserts that the State used a peremptory challenge to strike Sharon Ricks[3] because she failed to disclose misdemeanor convictions in the juror questionnaire, and that this reason must be pretextual because the State did not challenge two Caucasian jurors, Dwayne Eley and Todd Arender, both of whom also arguably failed to disclose misconduct on the juror questionnaire. However, once again Price simplifies the State's proffered reasons; the State challenged Ricks not only because she failed to disclose her convictions on the juror questionnaire but because she seemed evasive and untruthful.[4]

A review of the evidentiary hearing demonstrates that the State's race-neutral reasons for

---

[3] The record is actually unclear on whether Sharon Ricks is an African-American. Her rap sheet indicates that she is African-American. However, at the evidentiary hearing, the following exchange occurred between counsel for the State and the prosecutor who participated in the juror selection process:
Q. Do you have any recollection as to Ms. Ricks' race or ethnicity?
A. Ms. Ricks was a white female.
(Hr'g, 88).
Since the State's brief assumes that Ricks is an African-American, this court will do so as well.

[4] The following exchanges occurred between counsel for the State and the prosecutor who participated in the juror selection process:
Q. Were you satisfied with that explanation, or did you think she had been untruthful to you about the – on the questionnaire?
A. I thought she was kind of evasive. And when I offered a challenge for cause, the judge – the judge – when I offered a challenge for cause at Page 584, the judge says, 'Well, you know, a lot of jurors get confused.' But I had other jurors who weren't confused. So I considered that a good challenge for cause. And I offered a challenge for cause because of that evasiveness . . . .
Q. Let me ask you this: Is it just the fact that she had the prior conviction or the fact that she was untruthful on her questionnaire about it that was the most important part to you?
A. Untruthful part. Whether they have prior convictions or not, you know, I have a lot of jurors that have misdemeanor convictions and that's no big deal, or a traffic conviction is no big deal or arrests and no convictions, that's no big deal.
(Hr'g, 93-94).

striking Ricks were credible. Although Ricks' rap sheet indicated that she had two misdemeanor convictions, one for a DWI and one for simple criminal damage to property, she checked the box marked "No" in response to the question, "Have you ever been convicted of a crime other than a traffic offense?" on the juror questionnaire. (Hr'g, Ex. 1). Furthermore, while Ricks admitted her misdemeanor convictions when the State's prosecutor inquired into her criminal history, she said that she had been convicted in Monroe City Court, even though both of her convictions were in Louisiana State District Court. (Hr'g, 92-93). Finally, Ricks initially mentioned only the DWI conviction, and had to be prompted by the State's prosecutor to admit the property damage conviction. (Hr'g, 179).

Like Ricks, Eley arguably did not specifically disclose all of his convictions on the juror questionnaire. While he had several misdemeanor convictions, including a DWI, he merely wrote, "Misdemeanor, DWI" on the part of the juror questionnaire where prospective jurors are asked to list their specific convictions. (Hr'g, Ex. 1). Unlike Ricks, however, Eley checked the box marked "Yes" in response to the question regarding whether a prospective juror has ever been convicted of a crime other than a traffic offense, and actually made an attempt to describe his convictions. Furthermore, Eley's description of his prior convictions arguably was a full disclosure of his prior convictions to the extent that "Misdemeanor" could refer broadly to all of his misdemeanor convictions. In addition, when the State's prosecutor inquired into Eley's criminal history, he responded, "Been picked up by the police several times, DUI's, drunk in public and stuff like that. I was stupid, deserved it. The system works." (Hr'g, 44). Thus, Eley was more forthcoming and less evasive than Ricks.

Finally, the State had no reason to believe that Arender was evasive or untruthful when he

8

did not disclose any misconduct on his juror questionnaire. Although Arender volunteered that he "got into some trouble in the Air Force" (Hr'g, 96), Arender did not have a rap sheet, and thus did not have any prior convictions. Since the juror questionnaire only asks prospective jurors whether they have been convicted of any crimes other than traffic offenses, Arender was neither evasive nor untruthful when he checked the box marked "No."

The final African-American juror that Price contends was challenged on a pretextual basis is Kelwa Heckard-Mitchell. Price argues that the State's use of a peremptory challenge to strike Heckard-Mitchell in light of a recent armed robbery conviction her brother received was pretextual because Ruby Pennington, a Caucasian juror whom the State did not challenge, had a cousin convicted of a sex crime. Here, as with jurors Dunlap-Griffin and Ricks, however, Price mischaracterizes the State's proffered reason. The State challenged Heckard-Mitchell because her brother was prosecuted by the same district attorney's office which employed the State's prosecutor and because she mentioned that she would be uncomfortable sitting in judgment of others.[5] In contrast, Pennington's cousin was not prosecuted by the same district attorney's

---

[5] The following exchange occurred between counsel for the State and the prosecutor who participated in the juror selection process:
Q. And at 714, did you ask her what her feelings were about judging other people?
A. At 714, yes. 'What's your feelings about judging people?' And she said, 'Who am I to judge?'
Q. 'Who am I to judge?' Okay. And, well, did you follow that up?
A. And either I did or defense counsel, this may be defense counsel. But anyway somebody asked her, 'Well, who are you to judge?' And she said, 'No one.'
Q. 'No one.' Okay.
A. So now there's absolutely no way I'm going to take a juror or should I be required to take a juror who is not going to be able to sit in judgment.
A. Okay . . . .
Q. So it was a combination of that statement plus the fact that she had a brother that was in jail that caused you to issue your challenge for cause?
A. Right. A brother who's in jail due to the efforts of my office.

9

office which employed the State's prosecutor, and Pennington believed that she could fairly evaluate Price's case. (Hr'g, 133-34). The court therefore believes that the State's reasons for challenging Heckard-Mitchell were race-neutral.

### (c) The State's Use of For Cause Challenges and the Timing of the State's Challenges

Price makes two additional arguments. First, he argues that the State challenged certain African-American jurors for cause for the specific reason of obtaining a denial, which the State would then use as its reason for using a peremptory challenge against these same African-American jurors. (Price's Resp. Hr'g, 6 [doc. # 30]). Second, he argues that the timing of the State's decision to challenge Bernice Dunlap-Griffin - the State initially accepted Dunlap-Griffin, a Panel 1 juror, but later challenged her, as the State was entitled to do under Louisiana law, during the Panel 2 venire - gives rise to an inference of racial discrimination.

A court engaged in a *Batson* inquiry "must consider only the State's asserted reasons for striking the black jurors and compare those reasons with its treatment of the nonblack jurors." *Reed*, 555 F.3d at 375. Since, as the foregoing discussion indicates, the court finds the State's race-neutral proffered reasons to be credible, Price's arguments are unavailing.

Moreover, this court finds Price's second argument unavailing for another reason. A necessary component of this review is an assessment of the consistency and credibility of the

---

Q. That's right.
A. And recently.
Q. And that was the reason for your challenge for cause?
A. Right . . . . And the judge denied it . . . .
Q. Okay. And then when that was denied, were the same reasons that you just stated that – based your challenge for cause on, your reasons for the peremptory challenge?
A. Yes.
(Hr'g, 147-48).

State's prosecutor. The State's prosecutor testified that she initially put a question mark next to Dunlap-Griffin's name because she was unsure of whether she should challenge Dunlap-Griffin for cause. (Hr'g, 202). The prosecutor also testified that she ultimately decided to challenge Dunlap-Griffin after she looked back through her notes on the Panel 1 jurors and realized that Dunlap-Griffin had several reasons to be biased against the State. (Hr'g, 202-03). Given the race-neutrality and strength of these reasons - among them, that Dunlap-Griffin felt "bad" for a cousin of hers who had been convicted of a sex crime, believed that certain evidence in the case against her cousin was "missing," and did not believe that she could separate the facts of her cousin's case from Price's case - this court fails to see how the fact that the prosecutor waited until later in the proceedings to challenge Dunlap-Griffin supports an inference that the challenge was racially motivated.

### (d) Additional Facts Suggesting the Absence of a *Batson* Violation

As a final matter, this court takes note of two additional facts which suggest that the State did not use its peremptory challenges on the basis of race. First, Price used a peremptory challenge to strike Larry Davis, an African-American juror whom the State's prosecutor had hoped would serve on the jury. (Hr'g, 116- 17). This court does not take note of this fact to suggest that Price is now estopped from raising a *Batson* claim. *See United States v. Stephens*, 421 F.3d 503, 514 (7th Cir. 2005) (finding that a defendant's discrimination against prospective jurors on the basis of race does not render constitutional the prosecution's discrimination of potential jurors of the same race). Instead, this court takes note of this fact because it indicates that at least one African-American prospective juror would have served on the jury but for Price's use of a peremptory challenge, thus supporting the proposition that the State did not use its

peremptory challenges on the basis of race. Second, one of the alternate jurors, Lashonda Nelson, was African-American. (Hr'g, 156). The fact that in selecting the alternates, the state used its peremptory strike to strike a Caucasian, leaving an African-American on the jury, albeit as an alternate, weighs against a racial motivation for the peremptory challenges.

## CONCLUSION

For the reasons stated above, it is recommended that the petitioner's petition for writ of habeas corpus (Doc. #1) under 28 U.S.C. § 2254 be **DENIED and DISMISSED with prejudice**. Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 29th day of September, 2009.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE